## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA OSTERLAND, | ) | |
| | ) | CASE NO.    3:15-cv-990 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. 11).

The issue before the undersigned is whether the final decision of the Acting Commissioner of

Social Security ("Commissioner") denying Plaintiff Victoria Osterland's ("Plaintiff" or

"Osterland") application for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social

Security Act ("Act"), 42 U.S.C. §§ 416(I), 423, 1381 *et seq*., is supported by substantial evidence

and, therefore, conclusive.

For the reasons set forth below, the Court VACATES and REMANDS the final decision

of the Commissioner for further proceedings consistent with this opinion.

### I.  Procedural History

Plaintiff filed applications for POD and DIB in December of 2011, and for SSI in May of

2012.  (Tr. 180, 182 ).  Plaintiff alleged she became disabled on December 1, 2010.  (*Id*.)  The

Social Security Administration denied Plaintiff's application on initial review and upon reconsideration.  (Tr. 124, 128).

At Plaintiff's request, an administrative law judge ("ALJ") convened an administrative hearing on January 22, 2014 to evaluate her application.  (Tr. 20-36.)  Plaintiff, represented by counsel, appeared and testified before the ALJ.  (*Id*).  A vocational expert ("VE") also testified. (*Id*).

On February 6, 2014, the ALJ issued a partially favorable decision, finding Plaintiff was not disabled *prior* to November 17, 2013, but became disabled on that date due to a change in her age category.  (Tr. 34-36).  After applying the five step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers prior to November

---

[1]  1 The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  The Sixth Circuit has outlined the five steps as follows:

First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability.  20 C.F.R. § 404.1520(a)(4)(I).  Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment.  *Id*. § 404.1520(a)(4)(ii).  Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled.  *Id*. § 404.1520(a)(4)(iii).  Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled.  *Id*. § 404.1520(a)(4)(iv).  Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  *Id*. § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

2

17, 2013.  (*Id*).  Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr. 14-15).  The Appeals Council denied the request for review, making the ALJ's determination the final decision of the Commissioner.  (Tr. 1-3).  Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 1383(c)(3).

## II.  Evidence

### A.  Personal and Vocational Evidence

Plaintiff was born in May of 1959 and was fifty (50) years old on the alleged onset date, making her a "person closely approaching advanced age" for Social Security purposes.  (Tr. 180); 20 C.F.R. §§ 404.1563(d) & 416.963(d).  Plaintiff has past relevant work as a greeter, home health aide, and receptionist/general office clerk.  (Tr. 33).  Plaintiff has at least a high school education.  (Tr. 34).

### B.  Medical Evidence[2]

#### 1.  Treatment Records

On December 18, 2010, Plaintiff presented to the hospital complaining of shortness of breath, chest pains, and chills without fever.  (Tr. 293).  On examination, Plaintiff's oxygen saturation rate was 98%, and her lungs were clear to auscultation.  (Tr. 294).  Plaintiff also complained that her ankle was swollen to twice its normal size and a CTA of her ankle showed a large embolus in the distal right pulmonary artery extending into the pulmonary artery, as well as

---

[2]   The Court's recitation of the evidence is intended to be selective rather than exhaustive, as Plaintiff's first assignment of error revolves exclusively around the weight ascribed to the opinion of Doug M. Hoy, M.D.  As discussed below, the assignment of error is dispositive of this case and, therefore, the recitation of the medical evidence focuses primarily on Dr. Hoy's course of treatment.  Other medical records and opinions have been included only to give a broader picture of Plaintiff's impairments.

3

a fresh thrombus in the pulmonary artery. (Tr. 303, 320). A venous duplex study showed chronic post-thrombotic scarring on her left leg. (Tr. 323). On December 24, 2010, Plaintiff underwent surgery for a right femoral catheterization, vena cava angiography, and the insertion of a vena caval Trapeze filter. (Tr. 312). Following surgery, an occupational therapist evaluated Plaintiff on December 26, 2010 and noted that she was independent in her activities of daily living, though she required close supervision getting out of the tub/shower and minimal assistance with cleaning, laundry, and grocery shopping. (Tr. 326). Plaintiff's strength and range of motion were within functional limits in both the upper and lower extremities. (Tr. 326-334). She was discharged on December 27, 2010. (Tr. 299). Her discharge diagnosis was chest pain, shortness of breath, diabetes mellitus, weakness or fatigue, and pulmonary embolism. (Tr. 299).

On December 30, 2010, Plaintiff was seen by Doug M. Hoy, M.D. (Tr. 357). Dr. Hoy noted that Plaintiff's lungs were clear and her heart was normal. (Tr. 358). She was prescribed Coumadin. (*Id.*) Plaintiff weighed 338 pounds with a Body mass Index (BMI) of 62.08. (*Id.*) Dr. Hoy also diagnosed Plaintiff with right knee pain and cervical strain. (Tr. 358).

On February 17, 2011, Plaintiff presented to Dr. Hoy complaining of chest pain and occasional numbness in her hands. (Tr. 362). Her weight had increased to 345 pounds. (*Id.*) On examination, her heart and lungs were normal. (*Id.*)

On March 4, 2011, Plaintiff presented to the ER complaining of a cough, weakness, diarrhea, vomiting, rectal bleeding, and loss of appetite. (Tr. 345). On physical examination, her cardiovascular and respiratory functions were normal, and she had normal range of motion and strength. (Tr. 347-48). An electrocardiogram (EKG) and a radiology exam yielded normal results. (Tr. 349-351).

4

On December 12, 2011, Plaintiff was seen by Dr. Hoy for complaints of a cough, dizziness, weakness, and leg cramps.  (Tr. 371).  Plaintiff's lungs were clear with good air exchange.  (Tr. 372).  She weighed 354 pounds.  (Tr. 371).

On February 23, 2012, Plaintiff was seen by Dr. Hoy for left foot edema and hoarseness, she also requested Dr. Hoy complete paperwork for social security disability benefits.  (Tr. 390). She had 1+ edema.  (*Id.*)  Dr. Hoy completed a medical source statement indicating that Plaintiff could lift/carry no more than 5 pounds both occasionally and frequently and stand for no more than four hours in 2.5 hour increments due to back and leg pain and dyspnea.  (Tr. 405).  He also opined that Plaintiff could sit for 4 hours (1 hour without interruption) due to chronic leg swelling.  (*Id.*)  Dr. Hoy asserted that Plaintiff could rarely/never climb, balance, stoop, crouch, kneel, or crawl due to dyspnea.  (*Id.*)  She could, however, reach, handle, feel, and perform fine manipulation occasionally; but rarely or never push/pull or perform gross manipulation due to "breathing."  (Tr. 406).  With respect to environmental limitations, Dr. Hoy found Plaintiff could be exposed to heights and noise, but that her impairments impacted her ability to be around moving machinery, temperature extremes, chemicals, dust, and fumes.  (*Id.*)  He also noted that Plaintiff would need additional rest periods and a sit/stand option.  (*Id.*)  Plaintiff was not prescribed a cane, walker, brace, TENS unit, or breathing machine.  (*Id.*)  Dr. Hoy believed Plaintiff experienced moderate levels of pain.  (*Id.*)

On April 18, 2012, Plaintiff was seen by Dr. Hoy for a basic physical examination.  (Tr. 416).  Her lung examination was clear with good air exchange and no wheezing, rakes, or rhonchi.  (*Id.*)  Dr. Hoy also completed a Basic Medical form indicating that Plaintiff was 5'1" tall and weighed 356 pounds with a pulse rate of 80, blood pressure of 120/90, and a respiratory

rate of 18. (Tr. 412). Her medical conditions were identified as back pain, pulmonary hypertension, and leg edema (*Id*.) Her health status was rated as poor but stable. (*Id*.) Dr. Hoy found Plaintiff could stand/walk for 2 hours in an 8-hour workday (1 hour without interruption) and sit for 4 hours (2 hours without interruption), and lift/carry up to 5 pounds both frequently and occasionally. (Tr. 413). Plaintiff had marked limitations in pushing/pulling, bending, reaching, and performing repetitive foot movements. (*Id*.) Dr. Hoy also assessed Plaintiff as moderately limited in her ability to handle and see. (*Id*.) He opined that the assessed limitations were expected to last 12 months or more and that Plaintiff was unemployable. (*Id*.)

On July 24, 2012, Plaintiff presented to the ER with complaints of chest pain, headache, and dependent edema. (Tr. 419). She also reported fever, nausea, shortness of breath, and shooting pain in the back of her leg. (*Id*.) On examination, Plaintiff had bilaterally diminished breath sounds and +1 pitting on the left foot. (Tr. 420-421). She had a differential diagnosis of pulmonary embolism, atypical chest pain, chest wall pain, and pleural effusion. (Tr. 421). An EKG was normal and radiology results revealed pulmonary vascular congestion without evidence of infiltrate. (Tr. 422). Matthew Gutowicz, D.O., interpreted the x-ray and his impression was cardiomegaly, possible congestive heart failure. (Tr. 439).

On August 6, 2012, Plaintiff was seen by Dr. Hoy for a follow-up examination, which revealed some tenderness in the left leg. (Tr. 449). An ultrasound was ordered by Dr. Hoy due to Plaintiff's complaints of leg cramps and leg pain. (Tr. 448, 451). The test revealed no evidence of venous thrombosis in her left leg. (Tr. 448). Dr. Hoy completed a medical source statement concerning Plaintiff's physical capacity, indicating that she could lift/carry no more than 10 pounds both occasionally due to reduced range of motion and pain. (Tr. 442). She was

6

also limited to less than 1 hour of standing/walking in an 8-hour workday.  (*Id*.)  He also opined

that Plaintiff could sit for 2 hours (<1 hour without interruption) and rarely/never perform any

postural activities.  (*Id*.)  She could, however, frequently feel, but rarely or never reach, handle,

push/pull, or perform fine and gross manipulation.  (Tr. 443).  With respect to environmental

limitations, Dr. Hoy found Plaintiff could not be exposed to heights, but that her impairments

were otherwise not impacted.  (*Id*.)  He also noted that Plaintiff would need additional rest

periods and a sit/stand option.  (*Id*.)  Plaintiff was not prescribed a cane, walker, brace, TENS

unit, or breathing machine.  (*Id*.)  Dr. Hoy believed Plaintiff experienced severe levels of pain.

(*Id*.)  Dr. Hoy also completed a medical source statement concerning Plaintiff's mental capacity.

(Tr. 444-46).  In the domain of making occupational adjustments, Plaintiff's abilities were all

either "unlimited/very good,"  "good," or "fair," with the lone exception that she had a "poor"

ability to maintain regular attendance and be punctual within customary tolerance.  (Tr. 444-45).

Dr. Hoy rated Plaintiff's abilities in the domains of intellectual functioning and making personal

and social adjustments all as "unlimited/very good."  (Tr. 445).

On September 21, 2012, Dr. Hoy prescribed Jobst stockings and ordered a diagnostic

sleep study.  (Tr. 464-65).

On October 2, 2012, Plaintiff underwent a fiberoptic laryngoscopy.  (Tr. 474).  Plaintiff

was diagnosed with chronic laryngitis, laryngopharyngeal reflux, esophageal reflux, and reactive

airway disease.  (*Id*.)

On October 5, 2012, Michael Rosen, M.D., diagnosed Plaintiff with a small umbilical

hernia.  (Tr. 468).  He advised against surgery due to Plaintiff's morbid obesity and offered her

weight loss strategies.  (*Id*.)

On October 9, 2012, a pulmonary function test revealed "moderate obstruction without clear evidence of a significant bronchodilator response."  (Tr. 469).  There was evidence of fixed airways obstruction indicative of chronic obstructive pulmonary disease (COPD) and the possibility of concomitant restriction could not be ruled out without measurement of lung volumes.  (*Id*).

On October 17, 2012, a sleep study revealed that Plaintiff met the criteria for mild obstructive sleep apnea, which increased to the severe stage during REM sleep.  (Tr. 483).  It was recommended that Plaintiff use a CPAP machine and receive treatment for obesity.  (Tr. 483-84).

On May 8, 2013, Dr. Hoy completed another questionnaire.  (Tr. 513).  Plaintiff was assessed as having only mild limitations in her ability to sit for prolonged periods, but significant limitations in her ability to perform prolonged standing, kneeling, and movements in the work place.  (*Id*.)  He also assessed significant limitations in Plaintiff's ability to climb, bend, and reach/grasp.  (*Id*).  He also opined that Plaintiff had significant limitations in sustaining concentration, adaptive skills, interpersonal interactions, and stress tolerance.  (*Id*.)

### 2.  State Agency Opinions

On February 15, 2012, Sushil Sethi, M.D., performed a consultative examination on behalf of the State Agency.  (Tr. 375-77).  Dr. Sethi opined that Plaintiff could perform medium work that would require her to sit for 4 to 6 hours, walk 2 to 3 hours, and stand 2 to 3 hours in an 8-hour shift.  (Tr. 377).  He further found Plaintiff could lift/carry 20 to 25 pounds frequently and 30 to 50 pounds occasionally.  (*Id*.)

On February 27, 2012, Steve McKee, M.D., reviewed Plaintiff's records on behalf of the State Agency and opined that Plaintiff could lift/carry 50 pounds occasionally and 25 pounds

frequently; sit, stand, and walk for six hours in an eight-hour day; push/pull within the above

parameters; frequently climb ramps/stairs and crawl; occasionally climb ladders/ropes/scaffolds;

and, stoop, kneel, balance, or crouch without limitation.  (Tr. 88-90).  Dr. McKee did not assess

any manipulative, visual, communicative, or environmental limitations.  (Tr. 90).  While

acknowledging that Plaintiff is obese, he noted no resulting significant functional problems citing

the lack of ambulatory aids and a lack of breathing issues.  (*Id.*)

On July 16, 2012, Frank Stroebel, M.D., reviewed Plaintiff's file and concurred with Dr.

McKee's opinion except that he believed Plaintiff should never climb ladders/ropes/ scaffolds

and should avoid exposure to workplace hazards.  (Tr. 101-103).

## C.  Hearing Testimony

At the January 22, 2014 hearing, Plaintiff testified to the following:

- She lives alone and has done so for the past ten years.  (Tr. 50).

- Her daughter drove her to the hearing, because she has problems driving due to side effects caused by her medications, which include frequent urination and loose bowel movements.  (Tr. 50- 51).

- She has a high school degree and can perform very basic math.  (Tr. 51).

- She has no medical insurance.  She receives food stamps for groceries.  Family and friends help her pay basic bills.  (Tr. 51).

- Her last job was as a greeter at Walmart.  Prior to that job, she worked as a home health aide on a part-time basis.  She also worked as a receptionist full-time.  (Tr. 52, 54).  The heaviest weight she had to lift as a receptionist was 20 to 30 pounds. (Tr. 54).  She worked at a direct care provider as a home health aide, which required lifting up to 50 pounds.  (Tr. 54-55).

- She takes the following medications: Symbicort, Lasix, Herosami [phonetic], and Warfarin.  She experiences side effects from her medications, including blurred vision, vertigo, loose bowel movements, and frequent urination.  (Tr. 55-56).

9

- Prior to her hospitalization for a pulmonary embolism in 2010, she did not experience consistent problems performing her job as a greeter. She did, however, begin experiencing severe swelling in her left foot approximately six months prior to the time she stopped working at Walmart. (Tr. 56-57).

- During her hospitalization, she underwent a Greenfield filter placement. She has not had any recurrent embolisms. She did experience problems with deep vein thrombosis (DVT) or clots in her left leg shortly after her hospital stay and had to be readmitted. (Tr. 57). She has been prescribed Coumadin or Warfarin since that time. (Tr. 58).

- She is able to cook and perform housekeeping for herself. (Tr. 58).

- She can bathe and get dressed, but has difficulty with those activities. (Tr. 58). She becomes light-headed if she spends more than 10 minutes in the shower. (Tr. 59).

- She sits in a "very padded straight chair" with her left leg elevated on a stool to help with swelling. She can stand for 10 to 30 minutes before she begins to have problems with her leg and needs to sit down. (Tr. 60). Her leg swells daily and is exacerbated by extended standing and walking. Sitting normally with her feet down on the floor also results in discomfort and swelling after about 30 minutes. (Tr. 61). She can walk for, at most, 30 minutes before needing a break. (Tr. 62).

- With respect to her breathing, she has good days and bad days. On bad days, she spends an hour coughing up phlegm and mucus. (Tr. 62). She has to stop what she was doing and focus on her breathing. About half the days of each month constitute "bad days" with respect to her respiration. With respect to her everyday routine, her breathing causes more limitations than her foot. (Tr. 63).

- Due to lack of insurance, she has been unable to obtain support hose that helps with swelling, a sleep apnea machine, or speech therapy for her voice. (Tr. 63-64).

- She was placed on a low salt and low fat diet, but has not lost any weight. (Tr. 65).

- She uses an umbrella stroller to carry items, which helps with balance and breathing, as carrying things restricts her breathing. (Tr. 65).

The VE characterized Plaintiff's past relevant work as that of a home health aide, greeter, and general office clerk. (Tr. 67).

10

The ALJ posed the following hypothetical question to the VE:

Let's assume we have a hypothetical individual vocationally situated as is our claimant.  Let's assume that individual can perform all the functions of light work except – sitting or standing six of eight hours in a work day, and walking one of eight hours in a work day.  Occasional pushing or pulling of levers or controls with the extremities.  Occasional climbing stairs, no climbing ladders and the like.  Occasional stooping greater than 90 degrees.  Occasional kneeling, crouching, and crawling.  Occasional exposure to temperature extremes, humidity, and respiratory irritants.  No exposure to obvious hazards.  The individual can also understand, carry out, and remember simple instructions.  Perform work that is not fast paced such as where the pace or productivity is not dictated by an external source over which the individual has no control, such as an assembly line or conveyor belt.  Make judgments on simple work and respond appropriately to usual work situations and changes in a routine work setting.  And respond appropriately to supervision, the general public, and coworkers, but only occasional need for actual speaking to others.  Is there work that such an individual – or excuse me, could such a person perform the claimant's past relevant work?

(Tr. 68-69).

The VE testified that all of Plaintiff's past relevant work would be eliminated.  (Tr. 69).

The VE, however, testified that such an individual would be able to perform the following jobs:

folder, Dictionary of Occupational Titles ("DOT") § 369.687-018 (3,000 jobs in Ohio, 60,000

nationally); production inspector, DOT § 739.687-102 (3,000 jobs in Ohio, 40,000 nationally);

food preparer, DOT § 311.677-010 (6,000 jobs in Ohio, 200,000 nationally).  The ALJ inquired

whether a sit/stand option within the above parameters affected the VE's answer.  (Tr. 69).  The

VE testified that a sit/stand option would eliminate the food preparer and folder positions.  (Tr.

69).  Based on his experience, the VE stated that the production inspector position would remain

at reduced numbers (2,000 jobs in Ohio, 20,000 nationally).  (Tr. 70).  The VE further stated that

additional positions exist that an individual with the added limitation could perform:  packer,

DOT § 559.687-074 (2,000 jobs in Ohio, 40,000 nationally); and assembler, DOT § 706.684-022

(2,000 jobs in Ohio, 80,000 nationally). (Tr. 70). In response to the ALJ's question, the VE noted that a limitation to rare exposure to temperature extremes, humidity, and respiratory irritants would not impact his answer. (Tr. 70).

Plaintiff's counsel inquired whether a hypothetical worker who needed to elevate his or her left foot "straight out" would impact the jobs identified.[3] (Tr. 71). The VE testified that anything higher than a footstool 6 to 9 inches in height would eliminate competitive employment. (*Id*).

### III. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law in her February 6, 2014 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  Since the alleged onset date of disability, December 1, 2010, the claimant has had the following severe impairments: history of pulmonary edema, chronic obstructive pulmonary disease, obesity, and mild L5-S1 and left knee degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4.  Since the alleged onset date of disability, December 1, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that since December 1, 2010, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)

---

[3] During the hearing, the ALJ told counsel not to pose a hypothetical concerning sedentary work, as "that would be a grid rule, so we don't need to go there." (Tr. 71).

except: sit or stand six of eight hours and walk one of eight hours in a work day; occasional pushing or pulling of levers or controls with the extremities; occasional climbing stairs; no climbing ladders and the like; occasional stooping greater than 90 degrees, kneeling, crouching or crawling; occasional exposure to temperature extremes, humidity and respiratory irritants; and no exposure to obvious hazards. The claimant can also: understand, carry out and remember simple instructions; perform work that is not fast paced, such as where the pace of productivity is not dictated by an external source over which the claimant has no control; appropriately respond to supervision, the general public, and coworkers; but, only occasional need for actual speaking to others.

6.  Since December 1, 2010, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.  Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. Applying the age categories non-mechanically, and considering the additional adversities in this case, on November 17, 2013, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Prior to November 17, 2013, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on November 17, 2013, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to November 17, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. Beginning on November 17, 2013, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13

12.  The claimant was not disabled prior to November 17, 2013, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-36).

## IV. Disability Standard

A claimant is entitled to receive a Period of Disability, Disability Insurance Benefits or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 20 C.F.R. §§ 404.1505, 416.905(a).

## V. Standard of Review

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence. *Blakley v. Comm'r of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kennedy v. Astrue*, 247 Fed. App'x 761, 2007 WL 2669153, at *3 (6th Cir. 2007); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed. (*Id.*)

14

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *See Kennedy*, 247 Fed. App'x 761, 2007 WL 2669153, at *3; *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VI.  Analysis

Plaintiff  claims the ALJ erred by: (1) failing to give deference to the opinion of her treating physician; and (2) failing to perform a proper analysis of her impairment of obesity in accordance with Social Security Ruling 02-1p.  Each will be discussed in turn.

**A.  Treating Physician Rule**

Plaintiff argues that the ALJ violated the treating physician rule with respect to Dr. Hoy, her treating physician.  (Doc. 13 at pp. 10-13.)  The record includes treatment notes from Dr. Hoy dating from December of 2010 and including several medical source statements as recounted above.  The parties do not dispute Dr. Hoy's status as a treating physician.

It is well-established that the ALJ must afford special attention to findings of a claimant's treating source.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  This doctrine, known as the "treating source rule" reflects the Social Security Administration's awareness that physicians who have a long-standing treating relationship with an individual are best equipped to

15

provide a complete picture of the individual's health and treatment history.  *Id*.; 20 C.F.R. §§ 416.927(c)(2), 404.1527(c)(2).  The treating source rule dictates that opinions from treating physicians are given controlling weight if the opinion is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "consistent with the other substantial evidence in the case record."  *Wilson*, 378 F.3d at 544.

When a treating source's opinion is not entitled to controlling weight, the ALJ is required to establish the weight given to the opinion by applying factors found in the governing regulations. 20 C.F.R. §§ 416.927(c)(1)-(6), 404.1527(c)(1)-(6).  These factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of treatment and frequency of examination; (4) the opinion's supportability and consistency; (5) the source's specialization; and (6) any other factors tending to support or contradict the opinion.  *Id*.  The regulations further require the ALJ to provide "good reasons" for the weight ultimately given to the opinion.  *See Wilson*, 378 F.3d at 544 (*quoting* SSR 96-2p, 1996 SSR LEXIS 9, 1996 WL 374188 at *5).  The reasons must be sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinions and the reasons for that weight.  *Id*.

The Sixth Circuit emphasized in *Gayheart v. Commissioner of Social Security* that the above standard requires two distinct analyses when assessing the treating source's opinion. *Gayheart*, 710 F.3d 365, 375-77; *Aiello-Zak v. Comm'r of Soc. Sec.*, 47 F. Supp. 3d 550, 555 (N.D. Ohio 2014) (Baughman, M.J.)  First, the ALJ must determine whether a treating source's medical opinion is entitled to controlling weight.  *Gayheart*, 710 F.3d at 376.  Under this first step, the ALJ must consider whether the opinion is (1) well-supported by clinical and laboratory diagnostic techniques, and (2) consistent with other substantial evidence.  *Id*. at 376.  If the ALJ

16

determines the treating physician's opinion is not entitled to controlling weight, he or she must then specify the weight given that opinion, based on consideration of the factors outlined in the regulations. *Id*. ("[T]hese factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight."). However, the text of the regulations guiding the ALJ's review of a claimant's treating source opinions only requires the ALJ to "consider" the factors set forth when making his decision. 20 C.F.R. §§ 416.927, 404.1527. A factor-by-factor analysis is not required so long as the ALJ's decision clearly conveys why the opinion was credited or rejected. *See Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) ("Although the regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons...for the weight...give[n] [to the] treating source's opinion' ...Procedurally, the regulations require no more.") (omitted text indicated in original).

Courts have established that an erroneous treating source analysis may not, in some circumstances, automatically require remand where the substantive aspects of the standard are met, supported by good reasons that are discernible from the opinion. For instance, remand may not be necessary where an ALJ fails to "strictly follow the *Gayheart* template, as long as the ALJ adequately addresses the required factors and articulates good reasons for discounting the treating source's opinion. *Aiello-Zak*, 47 F. Supp. 3d at 558 (*citing Dyer v. Soc. Sec. Admin*, 568 Fed. App'x 422 (6th Cir. 2014)); *see also Cox v. Comm'r of Soc. Sec.*, 5:14 CV 2233, 2015 U.S. Dist. LEXIS 145555, 2015 WL 6545657, *8 (N.D. Ohio Oct. 27, 2015) (Knepp, M.J.) (rejecting plaintiff's argument that the ALJ's treating physician analysis failed because he "telescop[ed] the two-step analysis" provided by *Gayheart*, finding it sufficient that the ALJ reasoned in the

17

analysis that the opinion was not consistent with other evidence); *see Aiello-Zak*, 47 F. Supp. 3d

at 558-59 (finding treating source analysis sufficient where ALJ carefully summarized the results

of the claimant's objective medical records, noted his daily activities, and explained why the

treating source's opinion was inconsistent with these facts).  Further, citing *Wilson*, the Sixth

Circuit has held:

> [T]he good reason requirement does not require conformity at all times. Violation
> of the rule constitutes harmless error if the ALJ has met the goals of the
> procedural requirement—to ensure adequacy of review and to permit the claimant
> to understand the disposition of his case—even though he failed to comply with
> the regulations terms.  An ALJ may accomplish the goals of this procedural
> requirement by indirectly attacking the supportability of the treating physician's
> opinion or its consistency with other evidence in the record.

*Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. App'x 435, 440 (6th Cir. 2010) (internal citations

omitted).  The *Coldiron* decision went on to explain that "courts look to the ALJ's decision itself,

and not other evidence in the record, for this support."  *Id*.

Here, after recounting the contents of Dr. Hoy's several medical source statements

concerning Plaintiff's functional limitations, the ALJ addressed his opinions as follows:

> Partial weight is given to the opinions of Dr. Hoy.  Although Dr. Hoy is an
> acceptable medical source under the Regulations and has a longitudinal treatment
> history with the claimant, the undersigned notes that the opinions of Dr. Hoy are
> generally inconsistent with the statements of the claimant, as found in the adult
> disability reports and testimony, which shows that the claimant has only mild
> limitations in the ability to do activities of daily living and expressed essentially
> no allegations of mental limitations consistent with the mental limitations he
> expressed in his opinions.  Furthermore, the opinion of Dr. Hoy is generally
> inconsistent with his own treatment notes, which show that the claimant
> responded well to conservative treatment measures for her chronic respiratory
> disease.  However, the opinions of Dr. Hoy are consistent with the objective
> radiographs of the claimant's chest form the Fisher-Titus Medical Center, which
> showed that the claimant had a large embolus in the distal right pulmonary artery
> and a fresh thrombus in the pulmonary artery supplying the left upper lobe and left
> lower lobe.  Further, the opinions of Dr. Hoy are consistent with x-rays of the

claimant's chest, which showed some hyperaerated lungs and some degenerative changes in the dorsal spine. Based upon the foregoing, partial weight is given to the opinion of Dr. Hoy.

(Tr. 31-32).

Plaintiff specifically argues that the ALJ erred by rejecting the standing and walking limitations assessed by Dr. Hoy. (Doc. 13 at pp. 12-13). In his various opinions, Dr. Hoy first limited Plaintiff no more than 4 hours of standing/walking, later reduced to 2 hours of standing/walking, and reduced again to less than 1 hour of standing and/or walking. (Tr. 405, 413, 442.) Each and every one of these opinions is more restrictive in terns of standing than the RFC, which indicated Plaintiff could stand for 6 hours in an 8-hour workday. (Tr. 24-25). Therefore, the ALJ clearly rejected the standing limitations assessed by Dr. Hoy.[4] The ALJ's analysis of Dr. Hoy's opinions, however, fails to set forth sufficiently specific "good reasons," as required under the treating source standard. In her assessment of Dr. Hoy's opinion, the ALJ recognized Dr. Hoy constitutes an "acceptable medical source" under the regulations and that he had a longitudinal treatment history with Plaintiff. (Tr. 31). Although the ALJ did not specifically address the issue, it is clear from the opinion that she did not find Dr. Hoy's opinion

---

[4] It also bears noting that Dr. Hoy's standing/walking assessment could have a significant impact on the ability to perform light work. Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30 states that a "full range of light work requires standing or walking, off and on, for a total of *approximately* 6 hours of an 8-hour workday." SSR. 83-10, 1983 SSR LEXIS 30, 1983 WL 31251, at *6 (1983) (emphasis added). The ruling "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday." *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 U.S. Dist. LEXIS 73748, 2014 WL 2434631, at *14 (N.D. Ohio May 29, 2014) (Armstrong, M.J.) Instead, it explains that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30, 1983 WL 31251, at *6.

19

was entitled to controlling weight. (Tr. 31-32). Nevertheless, the ALJ's rejection of the standing limitations assessed by Dr. Hoy would not necessarily require remand if good reasons were contained in the decision explaining the weight the ALJ ascribed to Dr. Hoy. Rather, the ALJ's analysis is conclusory and devoid of a meaningful explanation. The first reason offered by the ALJ is that Dr. Hoy's opinion is allegedly inconsistent with the statements of Plaintiff as found in her testimony and in the disability reports, which she states show only mild limitations in her ability to perform activities of daily living.[5] (Tr. 31-32). The ALJ does not explain how Plaintiff's ability to engage in basic activities of daily living such as bathing or dressing undermines Dr. Hoy's opinion, specifically with respect to Plaintiff's ability to stand. The Commissioner also points out that Plaintiff testified she can perform her own housework.[6] (Doc. 14 at p. 11). However, Plaintiff's testimony is completely bereft of any indication as to the level or frequency of the housework she could perform (*i.e.*, whether it was performed daily, weekly, or sporadically, and how long such work required her to be on her feet). (Tr. 58-62). Furthermore, the mere fact that Plaintiff acknowledged some rather minimal level of activities,

---

[5] The ALJ also specifically notes that Plaintiff has not alleged any mental limitations, which undermines Dr. Hoy's assessed mental limitations. (Tr. 32). The Court declines to address this issue, as the ALJ's failure to give good reasons for rejecting the standing limitations assessed by Dr. Hoy necessitates a remand. In the Court's view, the reliability of the mental limitations assessed by Dr. Hoy has little, if any, bearing on whether the ALJ gave good reasons for rejecting the assessed *physical* limitations.

[6] The Commissioner's *post hoc* attempt to supplement the reasons cited in the ALJ's opinion for rejecting Dr. Hoy's opinion or to clarify what the ALJ might have considered inconsistent between Dr. Hoy's opinion and his treatment notes is not well taken. An ALJ's reasons for rejecting a treating source's opinion must be apparent from the language of the decision. *See, e.g.*, *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x 515, 524 (6th Cir. 2014) ("In reviewing an ALJ's findings and conclusions, this Court shall not 'accept appellate counsel's *post hoc* rationalization for agency action in lieu of [accurate] reasons and findings enunciated by the Board.") (internal page numbers omitted).

performed with some difficulty, is not necessarily indicative of an ability to perform substantial

gainful activity for 8 hours a day, nor can her testimony be reasonably be construed as conflicting

with Dr. Hoy's assessment as to her ability to stand. *See e.g., Kalmbach v. Comm'r of Soc. Sec.*,

409 Fed. App'x 852, 864 (6th Cir. 2011) (finding the claimant's ability to prepare her own meals,

dress herself independently, drive short distances and go to the grocery store, pharmacy and

church constituted "minimal activities [that] are hardly consistent with eight hours' worth of

typical work activities"); *Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that

[a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing,

and floor sweeping does not necessarily indicate that this [claimant] possesses an ability to

engage in substantial gainful activity. Such activity is intermittent and not continuous, and is

done in spite of pain suffered by [claimant]."); *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir.

1963) ("It was not necessary that [the claimant] be bedridden or wholly helpless in order to

establish his claim for benefits.")

  As to the second reason provided by the ALJ for rejecting Dr. Hoy's opinion, she states

that it is inconsistent with his treatment notes but does not specifically cite any portion of those

notes that undermines the physical limitations assessed. The ALJ does, however, state that

Plaintiff responded well to conservative treatment for chronic respiratory disease. (Tr. 32).

Again, it is unclear how this statement undermines Dr. Hoy's assessment as it concerns

Plaintiff's ability to stand. While Plaintiff's breathing issues certainly could impact her standing

ability, the ALJ herself credited Plaintiff with numerous other severe impairments – obesity,

pulmonary edema, and left knee degenerative joint disease – that all could singularly or in

combination have a significant impact on her standing capability. Assuming the ALJ is correct

that Plaintiff had a positive response to treatment for her respiratory disease, that alone does not constitute a good reason for rejecting Dr. Hoy's standing limitations.

Furthermore, the ALJ's conclusory statement – that Dr. Hoy's treatment notes do not substantiate the limitations assessed – deprives this Court of the ability to conduct a meaningful review because she failed to discuss the content of his treatment notes, or point to specific inconsistencies.  Although there are occasions where an ALJ's discussion of other medical evidence and opinions of record implicitly demonstrates that the opinion of the claimant's treating physicians was inconsistent with the record evidence as a whole, *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 470-71 (6th Cir. 2006), the ALJ's discussion of the rest of the record herein, while substantial, does not shed any light on the reasons for rejecting Dr. Hoy's assessed limitations.  *See Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick."); *Orick v. Astrue*, No. 1:10-cv-871, 2012 U.S. Dist. LEXIS 19181, 2012 WL 511324, *5 (S.D. Ohio Feb. 15, 2012) (finding ALJ's analysis failed under treating source rule where he did not discuss treating source's notes in any meaningful way, ruling "when an ALJ fails to mention relevant evidence in his or her decision, 'the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'") (*quoting Morris v. Sec. of Health & Human Servs.*, 845 F.2d 326, 1988 WL 34109, at *2 (6th Cir. 1988)).  In addition, by simply suggesting that Dr. Hoy's own treatment notes support rejection of his opinion without a substantive explanation or analysis, an ALJ essentially invites a reviewing court to perform its own *de novo* review of the

22

record and to build an argument that supports the ALJ's decision to discredit a treating source. The Court declines to do so.

For the reasons set forth above, the Court finds the ALJ violated the treating source rule and failed to set forth good reasons for rejecting the limitations assessed by Dr. Hoy.

**B. Obesity**

In her second assignment of error, Plaintiff contends that the ALJ failed to consider the effect of obesity on her work-related functional limitations.  (Doc. 13 at pp. 13-14).  Specifically, Plaintiff asserts that the ALJ did not consider her obesity in accordance with Social Security Ruling ("SSR") 02-1p, 2002 SSR LEXIS 1, 2002 WL 34686281, when determining her RFC.

While it is true that SSR 02-1p advises adjudicators to consider a claimant's obesity during the disability evaluation process, the ruling does not require an ALJ to provide an exacting account of how the claimant's obesity impacted the ALJ's ruling at each step of the sequential analysis as Plaintiff implies.  The Sixth Circuit has observed that SSR 02-1p "does not mandate a particular mode of analysis.  It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations.  It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."  *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 411-12 (6th Cir. 2006); *accord Shilo v. Comm'r of Soc. Sec.*, 600 Fed. App'x 956, 959 (6th Cir. 2015) (noting that while an ALJ must consider a claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation, "[t]he ALJ is not required to use any 'particular mode of analysis' in assessing the effect of obesity.")

Because a remand has already been deemed necessary based on Plaintiff's first

assignment of error, it is not in the interest of judicial economy to decide the merits of Plaintiff's second assignment of error.  Nevertheless, to the extent Plaintiff's brief suggests that the ALJ violated SSR 02-1p by failing to perform an analysis of Plaintiff's obesity in a particular manner, such an argument lacks merit.  The decision specifically states that it has "accounted for functional limitations associated with obesity and has taken into consideration its effects on other impairments...." (Tr. 29-30).  Plaintiff's brief acknowledges this language but claims no actual analysis occurred.  (Doc. 13 at p. 14).  The Commissioner responded by arguing Plaintiff has not identified any specific functional limitations stemming from her obesity, either alone or in combination with other impairments.  On remand, the ALJ should be mindful of the requirements of SSR 02-1p and the impact of Plaintiff's obesity on her RFC.[7]

## VII.  Conclusion

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case for further proceedings consistent with this opinion.

IT IS SO ORDERED.

/s/ Kenneth S. McHargh
U.S. Magistrate Judge

Date: August 11, 2016

---

[7]  The Court's cautionary language should not be interpreted as either rejecting or sustaining the second assignment of error.